Law Offices of Jan Ronis
Jan Ronis SBN 51450
105 West F Street, 3rd Floor
San Diego, CA 92101
Telephone: (619) 239-1199
Facsimile: (619) 236-8344

Attorney for Defendant
CORNELIO CAZAREZ MADRID

Law Office of Guadalupe Valencia
Guadalupe Valencia, SBN 197831
105 West F Street, 3rd Floor
Law Offices of Gretchen C. von Helms
Gretchen C. von Helms, SBN 156518
105 West F Street, 3rd Floor
San Diego, CA 92101
Telephone: (619) 232-2158
Facsimile: (619) 232-2158

Attorneys for Defendant
SINOHE ANTONIO ARAUJO MEZA

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Cornelio Cazarez Madrid (1)<br><br>Sinohe Antonio Araujo Meza (3),<br><br>Defendants. | Case No.: 1:16-cr-00680-GHW<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS ELECTRONIC EVIDENCE AND FOR BILL OF PARTICULARS AND POINTS AND AUTHORITIES IN SUPPORT THEREOF |

**PLEASE TAKE NOTICE** that defendants Cornelio Cazarez Madrid ("Mr. Madrid"), by and through his counsel Jan Ronis, and Sinohe Antonio Arajuo Meza ("Mr. Meza"), by and through his counsel Guadalupe Valencia and Gretchen von Helms,

respectfully jointly request this Court order the Government to produce a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.

Additionally, Mr. Madrid and Mr. Meza move this Court to suppress all evidence obtained pursuant to execution of Wiretap Order 15-72, on the grounds that insufficient probable cause was shown to support issuance of the wiretap, and that investigators failed to properly utilize traditional methods of investigation before seeking issuance of Wiretap 15-72.

Finally, Mr. Madrid and Mr. Meza request leave from this Court to file additional motion, as need arises.

This Motion will be based upon this Notice and the attached Memorandum of Points and Authorities, exhibits, and any other pleadings, papers, evidence, and written or oral arguments the parties may submit.

///

///

## TABLE OF CONTENTS

**I. STATEMENT OF FACTS**……………………………………………………7

**II. ARGUMENT**…………………………………………………………………...9

A. Motion for Bill of Particulars…………………………………………………9

1. Applicable Law…………………………………………………………9

2. A Bill of Particulars is Necessary to Allow for Adequate Defense Preparation and to Prevent Unfair Surprise at Trial…………………………………………………………...11

B. Suppression of Evidence Obtained Through Execution of Wiretap 15-72 Due to Lack of Probable Cause and Necessity………………………………………………13

1. Applicable Law………………………………………………………...13

2. Probable Cause for the Issuance of Wiretap 15-72 Fails Due to Impermissible Reliance upon Wholly Conclusory Statements………………………………………………...14

3. Investigators Failed to Adequately Utilize Available Traditional Methods of Investigation Thus Precluding a Finding of Necessity………………………………………………17

**III. LEAVE TO FILE ADDITIONAL MOTIONS**………………………………….18

**IV. CONCLUSION**……………………………………………………………….19

## TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

*Illinois v. Gates*
462 U.S. 213 (1983)........................................................................13,14

*Nathanson v. United States*
290 U.S. 41 (1933)........................................................................14

*Russell v. United States*
369 U.S. 749 (1962)........................................................................9,10

*United States v. Barnes*
158 F.3d 662 (2d Cir. 1998)........................................................................10

*United States v. Bortnovsky*
820 F.2d 572 (2d Cir. 1987)........................................................................10

*United States v. Chen*
378 F.3d 151 (2d Cir. 2004)........................................................................9

*U.S. v. Clark*
638 F.3d 89 (2d Cir. 2011)........................................................................14

*United States v. Dames*
380 F.Supp. 2d 270 (S.D.N.Y. 2005)........................................................................11

*United States v. Davidoff*
845 F.2d 1151 (2d Cir. 1988)........................................................................10

*U.S. v. Debrow*
346 U.S. 374 (1953)........................................................................11

*United States v. Diaz*
176 F.3d 52 (2d Cir. 1999)........................................................................13

*United States v. Giordano*
416 U.S. 505 (1974)........................................................................14

*U.S. v. Lilla*
699 F.2d 99 (2d Cir. 1983)........................................................................18

*United States v. Marcus*
628 F.3d 36 (2d Cir. 2010)……………………………………………………..................9

*U.S. v. Mejia*
448 F.3d 436 (D.D.C. 2006)………………………………………….....................11

*U.S. v. Nachamie*
91 F.Supp. 2d 565 (S.D.N.Y. 2000)…………………………….........................13

*U.S. v. Santiago*
174 F.Supp. 2d 16 (S.D.N.Y. 2001)………………………………........................11

*United States v. Shabani*
513 U.S. 10 (1994)..……………………………………………………..............11

*United States v. Torres*
901 F.2d 205 (2d Cir. 1990)……………………………………………………...9

*United States v. Walsh*
194 F.3d 37 (2d Cir. 1999)…………………………………………………........11

*United States v. Yannotti*
541 F.3d 112 (2d Cir. 2008)…………………………………….....................13

*Will v. United States*
389 U.S. 90 (1967)..……………………………………………………….............9

**CONSTITUTIONS**

United States Constitution
4th Amendment……………………………………………………………………..9
5th Amendment……………………………………………………………………..9
6th Amendment……………………………………………………………………..9

**STATUTES AND RULES**

U.S. Code
18 U.S.C. § 2515……………………………………………………….............18
18 U.S.C. § 2518………………………………………………………...13,14,18
21 U.S.C. § 841…………………………..................................................7
21 U.S.C. § 846…………………………..................................................7
21 U.S.C. § 952…………………………………………………………………7
21 U.S.C. § 959…………………………………………………………………7
21 U.S.C. § 960…………………………………………………………………7

21 U.S.C. § 963 ........................................ 7

Rules of Criminal Procedure
Rule 7 ........................................ 2,9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

### A. Indictment

On October 13, 2016, the Government filed a six (6) page, two (2) count Indictment against Cornelio Cazarez Madrid ("Mr. Madrid"), Hernan Cazarez Madrid, and Sinohe Antonio Araujo Meza ("Mr. Meza"). Therein, the Government alleged Mr. Madrid and Mr. Meza were participants in a conspiracy to traffic narcotics. *See* Dkt. No. 5, 6.

In Count One, the Government alleges that from approximately May of 2015 to August of 2016, Mr. Madrid and Mr. Meza conspired, from a place outside the United States, to violate the narcotics laws of the United States, with an intent to manufacture, import, and distribute (1) five kilograms or more of cocaine, (2) one kilogram or more of heroin, and 500 grams or more of methamphetamine. Count One specifies violations of Title 21 U.S.C. §§ 960(b)(1)(B), 960(b)(1)(A), 960(b)(1)(H), 952(a), 959(a) &(d), and 963. *Id*.

In Count Two, the Government alleges Mr. Madrid and Mr. Meza participated in a conspiracy to distribute controlled substances, including one (1) kilogram or more of heroin, five (5) kilograms or more of cocaine, and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *Id*.

### B. Investigation and Wiretap Orders

The investigation into the alleged drug trafficking organization and conspiracy documented in the Indictment began in approximately October of 2014. The methods of investigation utilized by law enforcement heavily relied upon wiretap intercepts. The first documented wiretap, issued on October 23, 2014, was Order 14-122, authorizing interception of Target Telephone 1, used by an individual code named "Cisneros."

Based on discovery provided to defense counsel, law enforcement affected some nineteen (19) seizures in multiple states, included California, Illinois, and New York. Across the documented seizures, approximately 222 kilograms of cocaine, 43 kilograms of heroin, and 22 kilograms of methamphetamine were recovered.

Following Order 14-122, investigators applied for Order 14-136 (November 25, 2014), Order 14-144 (December 5, 2014), Order 14-154 (December 19, 2014), Order 14-157 (December 13, 2014), Order 15-04 (January 22, 2015), Order 15-12 (February 5, 2015), Order 15-08 (February 6, 2015), Order 15-22 (February 20, 2015), Order 15-31 (February 26, 2015), Order 15-34 (March 16, 2015), Order 15-47 (April 10, 2015), and a host of extensions on these orders. These orders targeted a number of independent phone numbers associated with various individuals allegedly working for a DTO. Each of the aforementioned orders was issued by Hon. Larry P. Fidler of the Los Angeles Superior Court, and pursuant to California Penal Code.

On May 11, 2015, investigators applied for Wiretap Order 15-72, which is the subject of this Motion.

Wiretap Order 15-72

On May 11, 2015, Special Agent Matthew Waldron of the Los Angeles Field Division of the DEA applied for an order authorizing interception of Target Telephone 21 (IMSI 334020282494783), associated with an individual code named "Ave Felix." It is believed the Government will argue Ave Felix's identity is Cornelio Madrid.

In the affidavit in support, Agent Waldron alleged that Ave Felix is an associate of an individual named "Ghandi." Ghandi allegedly has narcotics sources in Los Angeles, and allows Ave Felix to use one of his couriers (an individual named "Guero"). Agent Waldon further alleged that Ave Felix was using Target Telephone 21 to conduct narcotics-related conversations with Ghandi.

The application for Wiretap 15-72 was approved by Judge Fidler on May 11, 2015. Following that approval, investigators sought ten (10) subsequent intercept extensions, all of which were granted.

Subsequent to execution of Wiretap 15-72, investigators gathered thousands of pages of intercepts, in which Ave Felix was a participant. The nineteen seizures previously noted were also affected subsequent to execution of Wiretap 15-72.

///

## II. ARGUMENT

Mr. Madrid moves, joined by co-Defendant Mr. Meza, pursuant to Rule 7(f), and the Fifth and Sixth Amendments of the U.S. Constitution, for a bill of particulars setting forth particulars discussed herein, all of which are essential to ensure a fair trial and avoid a trial by ambush.

Additionally, Mr. Madrid and Mr. Meza move this Court to find the authorization for Wiretap 15-72 was ordered unlawfully, due to a lack of probable cause and an insufficient showing of necessity, as required by the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968. As the order was unlawful, evidence thereby obtained must be suppressed from use by the Government at trial.

### A. Motion for Bill of Particulars

#### 1. Applicable Law

Criminal Rule 7(f) requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged…" Fed. R. Crim. Pro. 7(f). This rule codifies the Sixth Amendment's requirement that "in all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI; *see Russell v. United States*, 369 U.S. 749, 770-71 (1962) ("where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.").

When an indictment fails to provide basic information necessary for a defendant to mount a defense and avoid surprise at trial, courts direct the Government to provide a bill of particulars with the needed information. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010); *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (a bill of particulars is required if the "charges of an indictment are so general that they do not advise the defendants of the specific acts of which he is accused."). Bills of particulars also ensure that

defendants can enforce the protections against double jeopardy afforded by the Fifth Amendment. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987).

District courts have broad discretion to order the Government to provide a bill of particulars. *See Will v. United States*, 389 U.S. 90, 98-9 (1967); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

The Second Circuit case law on the necessity of a bill of particulars is well-established. In *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) the Second Circuit found that a bare-bones, multi-year conspiracy charge was "insufficient on its face to provide the defendant with sufficient detail to defend adequately the charges against him." In *Bortnovsky*, the Second Circuit reversed the convictions, finding that the district court abused its discretion in denying the defendants' motion for a bill of particulars. There, where the indictment charged the defendants with having submitted false insurance claims, but did not provide any detail about those allegedly false claims, such as the dates or underlying losses. *Bortnovsky*, 820 F.2d at 574. The court found that the defendants' trial preparation was improperly hindered by the lack of specificity provided to them, and held "we do not look with favor on the manner in which the Government conducted the prosecutions. The relevant key events [were] … shrouded in mystery at the commencement of and throughout the trial." *Id*. at 574-5; see also *Davidoff*, 845 F.2d at 1154 (finding district court abused its discretion in denying a bill of particulars, and calling on the Government to fulfill its "obligation to particularize the nature of the charge" when only broad charging language is used).

Although an indictment may describe the offenses and the government's allegations, in order to ensure the defendant's constitutional protections, the description "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense . . . with which he is charged." *Russell v. United States*, 369 U.S. 749, 765 (1962). In evaluating the sufficiency of the indictment, a court should consider "the complexity of the offense; the clarity of the indictment; and the degree of

discovery otherwise available to defendants." *U.S. v. Santiago*, 174 F.Supp. 2d 16, 34 (S.D.N.Y 2001).

A bill of particulars may not be required where the government "has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Dames*, 380 F. Supp. 2d 270, 274 (S.D.N.Y. 2005) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Where, however, "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused," a bill of particulars will be required. *Id*.

Where an indictment charges an offense with sufficient certainty but fails to inform the accused of certain particulars of the charges against which he or she will have to defend at trial, the remedy is to move for a bill of particulars. *U.S. v. Debrow*, 346 U.S. 374 (1953).

**2. A Bill of Particulars is Necessary to Allow for Adequate Defense Preparation and to Prevent Unfair Surprise at Trial**

The Government, under the Controlled Substances Act, need not set forth overt acts for an indictment under Section 963 to be valid. *See U.S. v. Mejia*, 448 F.3d 436, 445 (D.D.C. 2006) (acknowledging Section 963, worded identically to 21 U.S.C. § 846, does not call for overt acts to be set forth in an indictment); see also *United States v. Shabani*, 513 U.S. 10 (1994). However, where there is a relaxed overt-act requirement, as in the indictment returned against Mr. Madrid and Mr. Meza for a violation of Section 963, due process may demand the Government produce a bill of particulars.

The Government's failure here to list overt acts substantially impairs the defendants' ability to prepare an adequate defense when considering a multi-year, multi-national, and multi-defendant conspiracy. An order for a bill of particulars is needed to balance the relaxed pleading requirements with the requirements of due process.

The Court should consider the quality of information provided by the Indictment coupled with the voluminous discovery subsequently provided to defense counsel. The Indictment makes no reference to the specific quantities of controlled substances attributed to Mr. Madrid and Mr. Meza's alleged participation in the conspiracy. Discovery provided,

totaling more than a gigabyte of information (equivalent to approximately 65,000 Microsoft Word pages) includes seizure reports, wiretap affidavits, and intercepts not uniformly involving both defendants. Moreover, the defendants' roles in the alleged narcotics trafficking operation throughout this deep pool of data is varied and vague. Thus, gap in information presented in the Indictment has hardly been filled with production of a vast and vague block of discovery pertaining to nineteen separate seizure events. Without further clarification, Mr. Madrid and Mr. Meza will be left to guess as to the specific acts the Government will present at trial.

To provide example, the Indictment alleges activities in "the Southern District of New York, Mexico and elsewhere." Dkt. No. 5 at 1. There is no hint at the total number of nations touched by the alleged conspiracy or the identity of the nations the Government will implicate during its presentation of evidence.

Pre-trial preparation time is precious, especially in a criminal case involving a drug trafficking organization as robust as the Government's alleged operation in this case.

Further, the indictment references distribution of three separate drugs: cocaine, heroin, and methamphetamine, all in vague quantities. The defendants' are left to speculate whether the Government intends to prove its case based on single transactions, several transactions or cumulatively across the nineteen separate seizures documented in the provided discovery as a whole. This information is certainly available to the Government, and so the Government must be ordered to provide these details in a bill of particulars.

The indictment is additionally insufficient with respect to the identities of co-conspirators, and when those individuals met or conversed. The Indictment references participation in a conspiracy by the defendants "and others known and unknown." Dkt. No. 5 at 3, 4. Intercepts provided reference numerous participants, usually identified by code or screen names. Mr. Madrid and Mr. Meza are entitled to know the names of all those the Government will argue were co-conspirators at trial. This information includes those co-conspirators the Government has learned of since the time of the indictment, as this is exactly the type of surprise a bill of particulars is designed to avoid. "If there are a large

number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators whom me may never have met." *U.S. v. Nachamie*, 91 F.Supp. 2d 565, 573 (S.D.N.Y. 2000).

To remedy the lack of information provided to defense counsel, Mr. Madrid and Mr. Meza request this Court order the Government to provide the following particulars:

1. The names of all persons known by the Government at the time or the indictment to be claimed at trial as the Defendants' co-conspirators;
2. The names of all persons determined since the time of the Indictment that the Government will claim at trial were the Defendants' co-conspirators;
3. The approximate date on which each defendant allegedly joined the conspiracy;
4. All countries in which overt acts in furtherance of the conspiracy were committed;
5. All overt acts in which each defendant allegedly participated.

**B. Suppression of Evidence Obtained Through Execution of Wiretap 15-72 Due to Lack of Probable Cause and Necessity.**

**1. Applicable Law**

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968 provides for court-ordered interceptions of communications." *United States v. Yannotti*, 541 F.3d 112, 124 (2d Cir. 2008) (citing 18 U.S.C. § 2518). "The statute allows a court to authorize a wiretap 'if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap." *Id*. (quoting *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999).

"The standard for probable cause applicable to § 2518 is the same as the standard for a regular search warrant." *Diaz*, 176 F.3d at 110. Probable cause is analyzed under the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The Supreme Court has instructed that the 'totality of circumstances' must present the magistrate with

"sufficient information…to allow *that official*" to make the necessary determinations; "his action cannot be a mere ratification of the bare conclusions of others."" *U.S. v. Clark*, 638 F.3d 89, 97 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 239) (emphasis in original). A Wholly conclusory statement is inadequate to allow independent determination of probable cause. *Id*. (citing *Nathanson v. United States*, 290 U.S. 41 (1933).)

In addition to probable cause, an application for wiretap authorization must establish necessity. The Government may utilize electronic surveillance when necessary to ferret out serious crime only when assurances have been made that citizens are not subjected to unreasonable and unnecessary intrusions into their privacy. *United States v. Giordano*, 416 U.S. 505, 526-27 (1974).

18 U.S.C. § 2518(1)(c) requires each application for electronic surveillance include a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonable appear to be unlikely to succeed if tried. 18 U.S.C. § 2518(3)(c) requires the issuing judge to determine whether normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. Where the Government fails to comply with its duty to demonstrate necessity, suppression of wiretap evidence is the appropriate remedy. *Giordano*, 416 U.S. at 527.

**2. Probable Cause for the Issuance of Wiretap 15-72 Fails Due to Impermissible Reliance upon Wholly Conclusory Statements**

Throughout the fifty-seven (57) page affidavit-in-support of Wiretap 15-72, probable cause for the magistrate to conclude Target Telephone 21 would be used for criminal activity comes down to three conversations and a seizure of 591 kilograms of cocaine 80 miles off the coast of Costa Rica.

Therein, the affiant references an intercept between Ave Felix and Ghandi, obtained on April 14, 2015:

///

///

> On April 14, 2015, at approximately 10:33a.m., Ave Felix, using Target Telephone #21, engaged in a BBM conversation with Ghandi, who was using Target Telephone #12. Ave Felix asked Ghandi if he (Ghandi) could bring down a "ticket" (U.S. Currency) from "Los" (Los Angeles, California). Ghandi agreed and asked Ave Felix how much. Ave Felix told Ghandi "100" ($100,000). Ghandi asked if he (Ave Felix) had it (U.S. Currency) ready so he (Ghandi) could call Guero and ask for a number (telephone number for the person in possession of the $100,000) to call.

The affiant does not present the direct content of this conversation, but paraphrases it entirely. The affidavit interprets "ticket" to mean U.S. currency, and "Los" to reference Los Angeles. Ave Felix requests "100"; the affiant interprets this figure to mean "$100,000" in U.S. currency. The affiant acknowledges it is *his belief* that the conversation amounts to a request by Ave Felix for Ghandi to transport $100,000.00 from Los Angeles to Mexico. Overall, this is a conclusory statement in light of a lack of factual context as to the historical use of these terms by the participants. The magistrate is essentially left to accept the affiant's interpretation of these terms to infer criminal activity. Such interpretation should have been left to the magistrate based on provided facts offering context. As the criminality of the conversation is totally based on the agent's interpretation, for all purposes, the conversation amounts to a wholly conclusory statement.

The affiant further documents an intercept occurring on April 14, 2015 between Ave Felix and Ghandi:

> On April 14, 2015, at approximately 12:36 p.m., Ave Felix, using Target Telephone #21, engaged in a BBM conversation with Ghandi, who was using Target Telephone #12. Ghandi told Ave Felix that they (LIC's associates) called and said the "car" (airplane) left and came back without any news (detection by law enforcement). Ghandi told Ave Felix that is what [redacted] said and that [redacted] (unidentified male) is already set up for Monday.

The agent interprets "they" as associates of a narcotics trafficking operation, "car" to mean "airplane," and "without any news" to mean "detection by law enforcement." The affidavit is silent as to the basis for this interpretation, beyond the agent's experience and training. Again, the magistrate was forced to accept the agent's interpretation in order to

ascertain criminal activity. As with the prior call, the statement amounts to a wholly conclusory interpretation by the agent, and insufficient to sustain probable cause.

Finally, the affidavit documents an intercept between Ave Felix and Ghandi, obtained on April 28, 2015:

> On April 28, 2015, at approximately 9:13 p.m., Ave Felix, using Target Telephone #21, engaged in a BBM conversation with Ghandi, who was using Target Telephone #12. Ghandi told Ave Felix that they (SOS in Colombia) did not give it (information on the boat loaded with cocaine) to him (Ghandi) because he (Ghandi) had a person (narcotics courier) over there at the "edge" (U.S. Mexico border), but to tell the friend (customer in Los Angeles, California) that he (Ghandi) will send the information to him (customer in Los Angeles, California) tomorrow and it (transportation of cocaine via boat) was going well. Ghandi said it was "591" (591 kilograms of cocaine) and it (load of kilograms of cocaine) will be there (Los Angeles) tomorrow.

Overall, the affiant interprets the conversation to refer to a shipment of 591 kilograms of cocaine, and that shipment was *en route* to Los Angeles for distribution.

The affiant subsequently describes a seizure of 591 kilograms of cocaine off the coast of Costa Rica, headed to Honduras. While the reference to 591 in the conversation between Ave Felix and Ghandi is, *arguendo*, connected to the Costa Rican seizure, there is no fact alleged that the shipment was destined for the United States. The only information offered by the affiant as to the vessel's destination is through an intercept between "Lic" and Ghandi that the shipment was sitting off the shore of Costa Rica waiting to leave for Honduras.

In order for the magistrate to connect the seized shipment with criminal activity in the United States, total reliance on the agent's interpretation of the conversation is required. Sufficient factual context should have been provided to allow an independent determination *by the magistrate* as to the meaning of the April 28 intercept. This factual context was not provided.

Excising the affiant's wholly conclusory statements results in a lack of probable cause that Target Telephone 21 was being used for criminal activity. Extracting the

affiant's conclusory statements leaves only documentation of a seizure of 591 kilograms of cocaine, occurring off the coast of Costa Rica, and which was destined for Honduras.

Given the aforementioned, this Court must hold an insufficient showing of probable cause was made to sustain issuance of Wiretap 15-72. Therefore, its issuance was unlawful, warranting suppression.

**3. Investigators Failed to Adequately Utilize Available Traditional Methods of Investigation Thus Precluding a Finding of Necessity.**

The affidavit-in-support of Wiretap 15-72 paints a picture of an investigation heavily reliant upon wiretapping. As previously discussed, no less than eleven wiretaps were issued prior to Wiretap 15-72, not including numerous extensions. Available traditional methods saw far less utilization or dedication by law enforcement.

Per the affidavit, investigators did not know of confidential informants, and determined undercover agents would be ineffective. Trash searches were determined unavailable due to the layout of known locations. Failure to utilize reasonably unavailable or proven-useless investigative resources cannot be held against the Government. But investigators also knew of three locations attributable to Guero, and failed to adequately explore this resource.

The individual identified as "Guero" was believed to be a narcotics stash operator for Ghandi, a narcotics courier, and the subject of previously ordered wiretaps.

The affidavit-in-support indicates law enforcement was aware of: (1) a business at 1349 South Broadway in Los Angeles associated with Guero; (2) Guero's residence at 11227 Laurel Avenue in Whittier, California; and (3) Guero's place of employment, located at 12393 Slauson Avenue in Pico Rivera, California. Only one search warrant was executed; on 1349 South Broadway, where investigators knew Guero had dropped off currency for Ghandi. The search of this location turned up no contraband. However, no search warrant was sought for Guero's residence.

The determination that a search of the other addresses associated with Guero, most notably his residence, was entirely speculatory. The affiant notes that, "[a]lthough Guero's

believed residence is known, a search warrant at this point in the investigation would not in and of itself achieve the objectives of this investigation, and could greatly hinder the likelihood of achieving the full scope and potential of this investigation." This statement is wholly conclusory, and not justified by any case-specific fact. The Second Circuit, "like other courts [rejects] generalized and conclusory statements that…investigative procedures would prove unsuccessful." *U.S. v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983).

The information provided cannot allow a magistrate to reasonably determine a search warrant executed on the residence of a known operative for the drug trafficking organization would not produce evidence invaluable to the goals of the investigation. Law enforcement had a traditional method of investigation in the palm of their hands, and summarily rejected its usefulness due to their clear preference for reliance upon wiretapping. Inadequate usage of a potentially valuable resource undermines the magistrate's finding of necessity.

As traditional methods of investigation cannot be said adequately utilized so as to meet the necessity requirements of section 2518, Wiretap Order 15-72 was unlawfully authorized and executed. The remedy is clear: suppression. (See 18 U.S.C. §§ 2515, 2518(10)(a)(i).)

## III. LEAVE TO FILE ADDITIONAL MOTIONS

Mr. Madrid and Mr. Meza respectfully request leave from the Court to file additional motions, as need may arise.

///

///

## IV. CONCLUSION

For the aforementioned reasons, Mr. Madrid and Mr. Meza respectfully request this Court issue an order for the Government to produce a Bill of Particulars. Additionally, Mr. Madrid and Mr. Meza request this Court suppress all evidence derived from execution of Wiretap Order 15-72, and all subsequent extensions and derived wiretap orders. Evidence requested for suppression includes all intercepts obtained, as well as derivative evidence acquired by use of information so obtained.

.

DATED: May 3, 2019

*/s/ Jan Ronis*
JAN RONIS
Attorney for Defendant
Cornelio Madrid

*/s/ Guadalupe Valencia*
GUADALUPE VALENCIA
Attorney for Defendant
Sinohe Meza

*/s/ Gretchen von Helms*
Gretchen von Helms
Attorney for Defendant
Sinohe Meza